UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                                )<br>)<br>LAWRENCE M. CROWELL, )<br>Defendant.              )<br>) | C.A. No. 16-107-JJM-LDA |

### ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Upon Motion of the Defendant Lawrence Crowell for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court GRANTS the Motion for Compassionate Release. ECF Nos. 44, 46. The Court sentenced Mr. Crowell to seventy-two months of incarceration after he pleaded guilty to possession with intent to distribute marijuana, felon in possession of a firearm, and possession of a firearm in furtherance of drug trafficking. He has served over three and a half years of the sentence, and his current expected date of release is in less than seventeen months (January 2, 2022).

### I.  STANDARD OF REVIEW

Under 18 U.S.C. § 3582(c) and U.S.S.G. § 1B1.13, once a defendant demonstrates that he has exhausted the Bureau of Prisons' administrative process for compassionate release, or thirty days have lapsed without a decision, whichever occurs first, a district court may reduce a defendant's term of imprisonment provided the court determines: (1) extraordinary and compelling reasons warrant the

reduction; (2) the defendant will not be a danger to the safety of any other person or the community; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a) favor release. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; *see also United States v. Miamen*, No. CR 18-130-1 WES, 2020 WL 1904490, at *2 (D.R.I. Apr. 17, 2020). The defendant carries the burden on a motion for compassionate release. *Miamen*, 2020 WL 1904490, at *2.

## II. DISCUSSION

### A. Extraordinary and Compelling Reasons

Mr. Crowell has presented compelling reasons for compassionate release based on the fact that he suffers from an autoimmune disease that places him at risk of severe injury if he contracts COVID-19 and that the medical treatment he has received at the Bureau of Prisons (the "BOP") has been less than appropriate and less than required.[1]

Mr. Crowell has a family history of lupus—a chronic autoimmune condition in which the immune system attacks its own tissue. ECF No. 44 at 2-4. "People with weakened immune systems are at a higher risk of getting severely sick from SARS-CoV-2, the virus that causes COVID-19." Centers for Disease Control and Prevention, *If You Are Immunocompromised, Protect Yourself from Covid-19*, (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html. Mr. Crowell reports that his young daughter

---

[1] Mr. Crowell has exhausted the BOP's administrative process for his request for compassionate release. ECF No. 49 at 2.

2

suffered from a severe case of lupus and that his mother had the disease as well. ECF No. 44 at 2. This medical history has been documented in prior medical records as well as the extremely well-researched Final Presentence Investigation Report. *Id.*; *see also* ECF No. 34 at 20-21. While in custody, an infectious disease specialist outside of FCI Schuylkill told Mr. Crowell that he had lupus. ECF No. 44-2 at 1. And lab reports for Mr. Crowell show results consistent with lupus. ECF No. 48.

The medical personnel at FCI Schuylkill, and now the U.S. Government in its opposition to Mr. Crowell's motion, assert that despite family history of the disease, and the positive lab test results, that only a rheumatologist can diagnose Mr. Crowell with lupus. ECF No. 49 at 6. According to the infectious disease doctor that examined Mr. Crowell in March 2020, once the lab returned his tests results, he should have been referred to a rheumatologist for an exam and diagnosis. ECF No. 46 at 1-3.

The BOP has also subjected Mr. Crowell to what is extremely poor medical care. Medical personnel at the BOP at first misdiagnosed Mr. Crowell with syphilis despite his repeated assertion that he had lupus. *Id.* For over a year, the BOP treated him for the wrong disease. *See id.* By June 30, 2020, the BOP had not yet referred Mr. Crowell to a rheumatologist. The Court, with the agreement of the parties, issued this Order:

> by no later than Friday, July 31, 2020, the BOP will have Mr. Crowell examined and assessed for lupus by a rheumatologist, and the BOP will make all of Mr. Crowell's medical records in the possession of BOP available to the rheumatologist.

*See* ECF No. 53.

But the Government informed the Court that the BOP did not follow the Court's Order and has offered no response or explanation for their noncompliance. The Court, unfortunately, now has little confidence that the BOP will treat Mr. Crowell appropriately after it violated this Court's Order to have him seen by a rheumatologist.

Mr. Crowell's attorney best summed up the situation when she rhetorically asks these highly relevant questions:

> In November of 2018, Mr. Crowell asked to be tested for lupus; this is documented in his BOP health record. That test was only ordered after an outside specialist, Dr. Rossi, ordered it. Nearly twenty months have passed since the defendant made that request. The institution's health services administrator now claims that a referral is "advancing." What does that mean? When will Mr. Crowell know for sure that he has or does not have this potentially fatal disease?
>
> Mr. Crowell was misdiagnosed with syphilis and given the wrong medication for well over a year. How and why did this happen?
>
> When Mr. Crowell complained of medical malpractice because of this misdiagnosis, medical staff and the warden at Schuylkill lied and claimed that he never reported a family history of lupus. What is their explanation for this?
>
> Why was Mr. Crowell told that he has lupus? Why was he given literature about the disease? Why was he told that the treatment for the disease could put him at greater risk during the COVID-19 pandemic?
>
> Why do Mr. Crowell's June 10, 2020 medical records contain the diagnostic code for lupus? Why does Dr. Mace-Leibson's own assessment list lupus as his current condition? Why is she referring the defendant to a rheumatologist if she is convinced that he does not have lupus?
>
> If Mr. Crowell does not have lupus, what is the explanation for his abnormal bloodwork?

4

ECF No. 52 at 14-15.

The combination of Mr. Crowell's medical condition and the BOP's response to it, and its blatant disregard of this Court's Order, establish extraordinary and compelling reasons to release Mr. Crowell. *See United States v. Beck*, 425 F. Supp. 3d 573, 581 (M.D.N.C. 2019) (finding BOP's gross mismanagement of medical care for an inmate as extraordinary and compelling reason for a sentence reduction).

### B.     Section 3553 Factors Analysis

The Court next must analyze the 18 U.S.C. § 3553 factors and determine if Mr. Crowell poses a danger to the public. The Government opposes Mr. Crowell's motion, asserting that Mr. Crowell poses a significant danger to the community if released. *See* ECF Nos. 49, 55, 57.

After reviewing Mr. Crowell's Presentence Investigation Report again, and reviewing the § 3553 factors, the Court concludes that it is now appropriate to release Mr. Crowell. First, at thirty-five years old, the risk that Mr. Crowell will reoffend has diminished. *See* U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 3 (2017). Also, while in prison, the BOP classified Mr. Crowell as medium security. ECF No. 54 at 3. And he earned significant goodtime credit.   ECF No. 54-1 at 1.   "During this brief period, he has presented no management concerns." *Id.* at 3. BOP assigned him a recreational orderly job where "he receives satisfactory work evaluations." *Id.* at 1.

Looking forward, Mr. Crowell has significant family support and plans to live with his child's grandmother. ECF No. 44 at 2. His prospects for gainful employment

5

are high because he has some college education (ECF No. 34 at 2) and a job awaiting him upon his release. ECF No. 54 at 5. And he completed the OSHA General Industry training during his incarceration. ECF No. 54-1 at 2. The BOP posits that "[u]pon release from incarceration he should be considered fully employable." *Id.*

Mr. Crowell's criminal history and involvement with drugs and guns causes the Court concern. But the Court finds that having served over two-thirds of his sentence, and with adequate supervision during his two years of supervised release, Mr. Crowell's release does not pose a risk to the public. The Court also finds comfort in Mr. Crowell's personal assurances that he acknowledges his "faults and accept[s] them" and will not "repeat[] the choices" that led to his imprisonment. ECF No. 54-3 at 2.

In considering all the § 3553 factors of punishment, deterrence, public safety, rehabilitation, and the personal characteristics of Mr. Crowell, the Court finds that with over two-thirds of his sentence complete—he has served over three and a half years—Mr. Crowell's time served in prison is an appropriate sentence for a man with a high risk of serious harm if he were to contract COVID-19.

### III. CONCLUSION

The Court concludes that (1) extraordinary and compelling reasons warrant Mr. Crowell's requested sentence reduction because of the COVID-19 pandemic, Mr. Crowell's preexisting medical conditions (including an autoimmune disease), and the BOP's response to these medical conditions; (2) Mr. Crowell will not be a danger to

the safety of any other person or the community; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a) favor release. *See* 18 U.S.C. § 3582(c)(1)(A).

Mr. Crowell's previously imposed sentence of imprisonment is reduced to time served. Mr. Crowell's terms of supervised release are the same with the added conditions that Mr. Crowell will remain self-quarantined for a period of fourteen days at the location where he is released and Mr. Crowell must spend the first three months of supervised release on home detention with radio frequency ("RF") monitoring. The RF monitoring will be installed by U.S. Probation after Mr. Crowell's fourteen-day self-quarantine period. While on home detention, these exceptions apply: employment, education, religious services, medical treatment, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, and other activities as pre-approved by U.S. Probation.

IT IS SO ORDERED,

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

August 14, 2020